UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Westfield Insurance Company,

    Plaintiff,

v.

Advance Auto Transport, Inc,
Gregory Lester Hansen,
Carolina Casualty Insurance Co., and
Indian Harbor Insurance Co.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 18-2596 (MJD/KMM)

---

    Michael S. Rowley, Goetz & Eckland P.A., Counsel for Plaintiff.

    Tamara L. Novotny, Cousineau, Van Bergen, McNee & Malone, P.A., Counsel for Defendants.

---

This matter is before the Court on the parties' cross motions for summary judgment. [Doc. Nos. 50 and 56]

## I.    Factual Background

Plaintiff Westfield Insurance Company brought this action seeking a declaration that it has no coverage obligation to Defendant Advance Auto Transport, Inc. and Gregory Hansen (collectively referred to herein as "AAT"), nor any obligation to provide reimbursement, contribution or indemnification to

1

AAT's insurer, Carolina Casualty Insurance Company ("Carolina Casualty") for the amount it paid to settle the underlying lawsuit on behalf of AAT as well as the defense fees incurred by Carolina Casualty.

The underlying facts involve the purchase and delivery of garbage trucks. In 2015, Rumpke Consolidated Companies ("Rumpke") ordered approximately 50 Mack power units, which included a cab and chassis, through Worldwide Equipment, Inc. ("Worldwide"), a Mack dealership. After receiving the order from Rumpke, Worldwide would "build the truck in a computer system" and upload the requirements to Mack. (Rowley Aff. Ex. B (Huffman Dep. at 26).) The cab and chassis were manufactured by Mack, and once manufactured, Mack arranged for it to be transported to McNeilus Truck and Manufacturing ("McNeilus") in Dodge Center, Minnesota where a packer unit would be made and installed on the chassis, transforming it into a garbage truck. (Id. Ex. A (Davidson Dep. at 16).)

Rumpke contracted independently and separately with McNeilus and considered the purchase of the cab and chassis to be separate and distinct from the mounting of the packer unit by McNeilus. (Id., at 77-78; Ex. C (Ney Dep. at

138-39).)  Worldwide played no role in the transaction between Rumpke and McNeilus.  (Id., Ex. B (Huffman Dep. at 118).)

Once McNeilus was done installing the packing unit onto the chassis and the garbage truck was completely assembled, McNeilus arranged for the truck to be transported to one of its facilities in Ohio.  (Id., Ex. C (Ney Dep. at 130); Ex. D (Ney Second Dep. at 95-96).)  McNeilus contacted AAT, which is one of the motor carriers it regularly used, to transport the finished garbage truck from to Minnesota to Ohio.  (Id. Ex. D (Ney Second Dep. at 41).)  Worldwide played no role in contracting with AAT to transport the truck to Ohio.  (Id. Ex. B (Huffman Dep. at 36-37).)

AAT's transport of the truck was pursuant to a Master Drive-Away Service Agreement, which provides that AAT is a motor carrier registered with the Federal Motor Carrier Safety Administration as a for-hire motor carrier of property and authorized to transport chassis or motor vehicles.  (Rowley Aff. Ex. F at Section 1.3.)  The Agreement further provided that AAT would provide drive-away services and would provide a driver to transport a vehicle to a particular location and that AAT would be paid for such transportation services and related expenses such as mileage, tolls, permits and fuel.  (Id. Section 2.)

With regard to the subject truck, McNeilus employee Blake Wiesemann sent an email to AAT to which delivery instructions were attached. (Id. Ex. D (Ney Second Dep. at 84-85); Novotny Aff. Ex. 11.) These instructions identified the truck, stated it was to be shipped from McNeilus in Dodge Center, Minnesota to Viking Ohio – Fairfield. (Novotny Aff. Ex. 11). Sara Link signed the delivery instructions on behalf of AAT and faxed the document back to McNeilus, reflecting that AAT accepted the job. (Rowley Aff. Ex. D (Ney Second Dep. at 87-88); Novotny Aff. Ex. 11.)

Other than instructing where to deliver the truck, McNeilus did not specify the route the AAT driver should take, and McNeilus did not check in or track the driver after he left McNeilus' place of business. (Rowley Aff. Ex. K (Samuelson Dep. at 23-24).) The driver assigned to ship the subject truck, Gregory Hansen, was given a bill of lading by AAT and routing information. (Novotny Aff. Ex. 7 (Hansen Dep. at 86).) On the morning of February 18, 2016, AAT employee Gregory Hansen arrived at McNeilus and located the truck and conducted a pre-trip inspection. (Id. at 102.) Hansen testified that everything checked out on the truck and drove off in the truck. (Id.)

After leaving Dodge Center, Hansen drove east on Highway 14 to Highway 52. (Id. at 47.) When he was south of Rochester, he started to make a left turn onto the ramp for Interstate 90, when a vehicle driven by Brady Gartner collided with the truck. (Id. at 47-48, 54.)

This accident gave rise to three lawsuits: Worldwide vs. McNeilus in which Worldwide sought recovery for the property damage to the truck; Gartner vs. Worldwide, AAT and Hansen, in which Brady Gartner's parents sought to recover for their son's injuries; and the instant action.

After the underlying personal injury action was commenced, counsel for AAT tendered it to Westfield requesting that Westfield provide a defense and indemnity, asserting Westfield was obligated to do so because AAT and Hansen were permissive users of a vehicle Worldwide owned at the time of the accident. Westfield denied the tender and commenced this action seeking a declaration that it had no obligations to AAT and Hansen under the relevant policy.

## II. Westfield Policy

Westfield insures Worldwide through its Garage Coverage Policy. The relevant provisions are as follows:

**SECTION II – LIABILITY COVERAGE**
**A. Coverage**

\*\*\*

## 2. "GARAGE OPERATIONS" – "COVERED 'AUTOS'"

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."

\*\*\*

### 3. Who is an Insured

a. The following are "insureds" for covered "autos":

(1) You for any covered "auto".

(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

\*\*\*

(c) Someone using a covered "auto" while he or she is working in a business of selling, servicing or repairing "autos" unless that business is your "garage operations".

\*\*\*

**SECTION VI – DEFINITIONS**

\*\*\*

**B.** "Auto" means a land motor vehicle, "trailer" or semitrailer.

\*\*\*

**H.** "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes

6

>the ownership, maintenance or use of the "autos" indicated in Section I of this coverage form as covered "autos." "Garage operations" also includes all operations necessary or incidental to a garage business.

(Rowley Aff., Ex. L.)

The Westfield Policy also includes Commercial Liability Umbrella coverage. This umbrella policy provides coverage of $10,000,000 per each occurrence for bodily injury and property damage and defines "insured" and "garage operations" the same as in the underlying auto policy. (Second Rowley Aff. Ex. B (Westfield Umbrella Policy, Garage Endorsement).)

### III.  Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

7

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).  The party opposing summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

 Minnesota law governs the interpretation of the policy at issue.  W3i Mobile, LLC v. Westchester Fire Ins. Co., 632 F.3d 432, 436 (8th Cir. 2011).  Under Minnesota law, general contract principles apply to insurance policies.  Id. (citing Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 45 (Minn. 2008)).  "The policy must be read as a whole, and unambiguous language must be accorded its plain and ordinary meaning."  SCSC Corp. v. Allied Mutual Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995) (citing Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co., 383 N.W.2d 645, 652 (Minn.1986)).  Any ambiguity is construed in favor of the insured.  Lott v. State Farm Fire & Cas. Co., 541 N.W.2d 304, 307 (Minn. 1995).

 "[T]he initial burden of proof is on the insured to establish a prima facie case of coverage."  SCSC Corp., 536 N.W.2d at 311 (citing Boedigheimer v. Taylor, 287 Minn. 323, 329, 178 N.W.2d 610, 614 (1970)) overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009)).

When an insurer denies coverage pursuant to an exclusion listed in the policy, the burden is on the insurer to show the applicability of the exclusion.  Id., at 313.

## IV.    Whether the Garage Operations Exclusion Applies

For purposes of the motions for summary judgment, Westfield does not deny that the garbage truck involved in the accident is a "covered auto" as defined in the Policy and that AAT was a permissive user under Minnesota law. (Doc. No. 52 (Westfield Motion S.J. at 2).)  Rather, it is Westfield's position that AAT is not an insured under the Policy because AAT falls within the automobile business exclusion contained in the garage operations policy.

Westfield argues that AAT was working in McNeilus' garage operations when the accident occurred because transportation of a finished garbage truck is an integral and essential part of McNeilus' sales operations and servicing of customers.  The price quotes that were provided Rumpke by McNeilus included a freight charge for transport intra-company for the finished truck.  The FOB point on the quote made it clear that McNeilus was to transport the trucks from Minnesota to Ohio.

Further, the Master Drive-Away Service Agreement executed by McNeilus and AAT demonstrates that transport of a truck is an integral part of its business. (Rowley Aff., Ex. F at Section 1.2.)

The deposition testimony and documentary evidence further confirms that AAT was not working at Worldwide's behest or within Worldwide's garage operation. As previously noted, McNeilus sent an invoice to Rumpke confirming that the truck was finished and that McNeilus arranged for transport of the truck by AAT. (Rowley Aff. Ex. C (Ney Dep. at 84-85); Ex. G.) McNeilus did not talk with Worldwide about hiring AAT to transport the truck, and there is no evidence that Worldwide played any role in hiring, monitoring, supervising, directing or communicating with McNeilus or AAT about the transport of the truck. (Id. Ex. C at 130; Ex. B (Huffman Dep. at 36-38); Ex. D (Ney Second Dep. at 16, 55-56, 94-97).) AAT had no contact with Worldwide or Rumpke in connection with the transport of the truck, and AAT was not hired to deliver the truck to either Worldwide or Rumpke. (Id. Ex. K (Samuelson Dep. at 26, 60-61).) Rather, AAT was to deliver the truck to a McNeilus facility in Ohio. (Id. at 65.)

Westfield argues that under a plain-meaning interpretation of the Policy, despite the fact that AAT was not itself selling, servicing or repairing covered

autos, AAT was nonetheless working in McNeilus' garage business – which was in the business of selling, servicing or repairing autos. The transportation of finished vehicles intra-company as well as inter-company was more than incidental to McNeilus' garage business; it was essential.

Grisham v. Allstate Ins. Co. is a decision that is factually on point. 992 P.2d 891 (N.M. Ct. App. 1999), cert. denied, 128 N.M. 148 (N.M. 1999). That case involved a company, Southwest, that was in the business of manufacturing "bodies" that go on trucks. Id. at 892. A customer, Sturgeon Electric Company ("Sturgeon"), wanted Southwest to mount a self-contained, custom-designed lube system on a truck. Southwest hired a driver, Spaulding, to drive Sturgeon's truck from Denver to Phoenix, so that Southwest could install the system. An accident occurred en route to Phoenix causing injuries to a third party. Id. at 892-93.

Wausau, whose insured was the customer, Sturgeon, denied coverage based on the automobile business exclusion. The language of such exclusion is the same as at issue here.

> The Wausau policy excludes a Sturgeon vehicle or its driver from coverage in certain circumstances when the vehicle is being driven by someone else; that is, "[s]omeone using a covered 'auto' while he or she is working in a

> business of selling, servicing, repairing, parking or storing 'autos' unless that business is[, Sturgeon's].

Id.

On appeal from the district court decision that the exclusion did not apply, the appellate court held that the automobile business exclusion is a common provision and is meant to address situations in which the automobile is turned over to a business where it is likely to be driven by one over whom the insured has no control. Id. at 893 (citing Wendt v. Wallace, 185 Minn. 189, 240 N.W. 470, 471 (1932). "Accordingly, once the independent automobile business assumes control over the vehicle, it is reasonable that the business, and not the owner, bear the cost of insuring for such risks under its own liability policy." Id. The court went on to hold that Southwest was in the business of "servicing" a customer's truck when installing its lube systems because "working in the business" for purposes of the exclusion includes "activities that are an integral and necessary part of the automobile business" including "the delivery of a vehicle for servicing by the automobile business or one of its agents." Id. at 895.

The court further held that because Southwest hired Spaulding to drive the truck to its facility for installation of the lube system, Spaulding, for purposes of

the automobile business exclusion, was working in the business of servicing the trucks as an agent of Southwest.

> "Working in the business" for the purpose of an automobile business exclusion includes activities that are an integral and necessary part of the automobile business. This includes the delivery of a vehicle for servicing by the automobile business or one of its agents. It is immaterial whether the delivery is non-routine or done as an accommodation to the customer. Additionally, the driver need not be an employee of the automobile business to fall within the exclusion as long as the driver is acting on behalf of the automobile business. "The decisive question ... is, not whether the [driver] was himself engaged in the automobile business at the time of the accident, but rather whether he was engaged in the automobile business of 'any other person or organization' ...."
> At the time of the accident, Spaulding was driving Sturgeon's truck to Southwest's place of business so that Southwest could install its lube system. Southwest had previously utilized Spaulding for this purpose as an accommodation to the customer. Southwest, not Sturgeon, selected Spaulding. Sturgeon had no control or direction over the route Spaulding was to take or the manner in which he was to deliver the truck to Southwest. Southwest paid Spaulding a mileage fee plus expenses, including fuel, room, and food. Southwest gave Spaulding cash advancements and had him present receipts for reimbursements and an itemized accounting of expenses to Southwest. Spaulding was delivering Sturgeon's truck as an integral and necessary part of Southwest's business. Therefore, at the time of the accident, Spaulding was "working in Southwest's business," as that phrase has been judicially interpreted.

Id. at 895 (internal citations omitted).

AAT first argues that the automobile business exclusion is ambiguous, because Westfield did not define "working in." The Eighth Circuit and other courts have found identical language to be "clear and unambiguous." See e.g.,

13

Columbia Ins. Co. v. Baker, 108 F.3d 148, 150 (8th Cir. 1997) ( construing an identical automobile business exclusion); United Fire and Cas. Co. v. New Hampshire Ins. Co., 684 F. Supp. 1030, 1032 (W.D. Mo. 1988) (same).

AAT next asserts that because Westfield used the term "working in" rather than "working for," for the exclusion to apply the driver must have been in the business of selling, servicing or repairing autos, or employed in such a business. AAT cites to no authority, however, that requires the driver involved in the accident to be employed in such a business. Rather, courts have looked to the degree of control the automobile business has over the driver. See e.g., Allstate Ins. Co. v. Universal Underwriters Ins. Co., 439 S.W.2d 385, 387-88 (Tex. Ct. Civ. App. 1969) (noting that where exclusion from coverage is based on the character of the use being made of the car at the time in question, it is immaterial if the driver of the car is an employee of one engaged in the automobile business).

For example, in Universal Underwriters Insurance Co. v. American Motorists Insurance Co., a car dealer arranged for an individual to transport a vehicle to and from the home of the vehicle's owner for servicing and minor repairs. 541 F. Supp. 755, 757 (N.D. Miss. 1982). The driver worked under an agreement with the dealership to transport vehicles, and as compensation, the

driver would receive without cost a new car by trading in his old car. Id. at 758. The court concluded that "[t]he relationship between [the car dealer] and [the driver] was one of principal and agent, and when the accident occurred, [the driver] as its agent and employee, was acting in furthering the automobile business of his employer."

Similarly, in Wesco Ins. Co. v. Valasquez an auto repair shop owner's wife was involved in an accident while she was returning the car to its owner. 540 P.2d 203 (N. Mex. 1975). The court found that because the driver was acting as the agent of the auto repair shop when the accident occurred, the automobile business exclusion applied. Id. at 205. See also State Farm Automobile Ins. Co. v. Long, 259 F. Supp. 3d 938, 947 (E.D. Ark. 2017) (citing with approval Toler v. State Farm Mut. Auto. Ins. Co., 64 Fed. Appx. 388 (4th Cir. 2003) (applying automobile business exclusion where wife of auto repair business was driving car at time of the accident)).

AAT further argues that McNeilus was not in the business of "selling, servicing or repairing autos." Like the company in Grisham, that installed custom-designed lube systems on trucks, McNeilus was servicing the trucks on behalf of Rumpke by making them "fit for service" as a garbage truck.

Further, many courts have held that "servicing" an auto includes the delivery of the auto to a business for repair. Columbia Ins. Co., 108 F.3d at 150; United Fire and Cas. Co., 684 F. Supp. at 1032. In this case, the record clearly establishes that AAT was transporting the truck on behalf of McNeilus – not on behalf of Worldwide's garage business. Rumpke separately contracted with McNeilus to install the packing unit, and McNeilus separately contracted with AAT to transport the finished garbage truck to a McNeilus facility in Ohio. From there, Worldwide would do a final inspection and turn over the truck to the customer, who would then complete payment for the garbage truck. Given that Worldwide had no contract with McNeilus or AAT, and that Worldwide had no contact or control over how AAT would transport the garbage truck after it was completed, the Court finds that AAT was working in McNeilus' business of servicing the vehicle at issue.

Based on the above, the Court finds that because AAT was delivering the garbage truck on behalf of McNeilus when the accident occurred, and because McNeilus is in the business of selling, servicing and repairing autos, the automobile business exclusion in the Westfield Policy applies. Accordingly, Westfield is entitled to summary judgment.

**IT IS HEREBY ORDERED** that:

1. Plaintiff Westfield Insurance Company's Motion for Summary Judgment [Doc. No. 50] is **GRANTED**; and

2. Defendants Advanced Transport, Inc, Gregory Lester Hansen, Caroline Casualty Insurance Co. and Indian Harbor Insurance Co.'s Motion for Summary Judgment [Doc. No. 56] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  May 5, 2020

s/ Michael J. Davis  
Michael J. Davis  
United States District Court
